UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANNETTE CAUSSADE,                              :

                       Plaintiff,                 :                    OPINION AND ORDER

          -v.-                                :
                                                12 Civ. 4767 (GWG)

UNITED STATES OF AMERICA,                      :

                       Defendant.                 :
----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Annette Caussade brought this action against the United States of America (the "Government") under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, alleging negligence. Complaint, filed June 19, 2012 (Docket # 1). The Government has moved to dismiss this action under Rules 16(f), 37(b)–(d), and 41(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for Caussade's failure to prosecute and failure to comply with Court orders.[1] The parties consented to having this matter decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the Government's motion to dismiss for failure to prosecute is granted and the case is dismissed with prejudice.

I.      BACKGROUND

      The Court entered a scheduling order on October 17, 2012, requiring service of interrogatories and document requests by November 2, 2012, and completion of fact discovery by February 28, 2013. Scheduling Order, filed Oct. 18, 2012 (Docket # 8), at 3. On November

---

[1] Notice of Motion, filed July 23, 2013 (Docket # 12); Memorandum of Law in Support of Defendant's Motion to Dismiss Pursuant to Rules 16(f), 37(b)–(d), and 41(b), filed July 23, 2013 (Docket # 13) ("Gov't Mem."); Declaration of Joseph A. Pantoja, filed July 23, 2013 (Docket # 14) ("Pantoja Decl."); Declaration of David Segal, Esq. Attorney for Plaintiff in Opposition to Defendant's Motion to Dismiss the Complaint, filed July 31, 2013 (Docket # 15) ("Opp."); Memorandum of Law in Further Support of Defendant's Motion to Dismiss Pursuant to Rule 16(f), 37(b)–(d), and 41(b), filed Aug. 6, 2013 (Docket # 16).

2, 2012, the Government mailed interrogatories and document requests ("Discovery Requests"),

including blank authorizations for the release of medical records, to Caussade's attorney, David

Segal, Esq., at his office address as listed on ECF.  Pantoja Decl. ¶ 9; United States of America's

First Set of Interrogatories and Request for Documents, dated Nov. 2, 2012 (annexed as Ex. 8 to

Pantoja Decl.).[2]  As of January 24, 2013, the Government had received no response or objection

from Caussade with respect to the Discovery Requests.  Pantoja Decl. ¶ 11.  Nor had Caussade

served her initial disclosures on the Government.  Id. ¶ 5.

 In early February 2013, Caussade mailed to the Government medical authorizations

releasing her records from medical providers.  Pantoja Decl. ¶ 11.  On February 12, 2013, the

Government noticed Caussade's deposition for February 25, 2013.  Id. ¶ 12; Notice of

Deposition, dated Feb. 12, 2013 (annexed as part of Ex. 13 to Pantoja Decl.) ("Dep. Notice").

On February 22, 2013, the Government cancelled the deposition because Caussade had not

confirmed that she would attend.  Pantoja Decl. ¶ 15.  On March 4, 2013, the Government

received Caussade's responses to the Discovery Requests.  Pantoja Decl. ¶ 17.  The interrogatory

responses were signed by Mr. Segal rather than Caussade and failed to list the contact

information of individuals identified in the responses.  See id.; Plaintiff's Answers to

Defendant's First Set of Interrogatories, dated Feb. 25, 2013 (annexed as Ex. 18 to Pantoja

Decl.).  To date, Caussade has neglected to correct these deficiencies despite repeated requests to

do so.  See Pantoja Decl. ¶¶ 13, 14, 22, 23.

---

[2] On December 18, 2012, Mr. Segal informed the Government that he had not received the Discovery Requests because the address listed for him on ECF was incorrect.  See Pantoja Decl. ¶ 10.  He consented to the Government serving him with the Discovery Requests by e-mail that day.  Id.; E-mail from Joseph A. Pantoja to Segal (Dec. 18, 2012, 10:29 EST) (annexed as Ex. 10 to Pantoja Decl.).

Between March and May 2013, the Government contacted Mr. Segal numerous times to request dates for Caussade's deposition.  See id. ¶ 18 (citing three letters and six e-mails).  In none of his responses did Mr. Segal offer dates that Caussade would be available for a deposition.  Id.  With Mr. Segal's consent, the Government requested an extension of fact discovery and an explicit requirement that Caussade's deposition take place on or before June 14, 2013, id. ¶ 19, which the Court ordered on May 24, 2013, id.; Endorsed Letter, filed May 28, 2013 (Docket # 10) ("May 24 Order").

On May 30, 2013, the Government e-mailed Mr. Segal requesting that Caussade's deposition be scheduled for June 12, 2013.  Pantoja Decl. ¶ 20; E-mail from Pantoja to Segal (May 30, 2013, 17:27 EST) (annexed as Ex. 22 to Pantoja Decl.).  The Government left a follow-up message for Mr. Segal on June 4, 2013, but he did not respond to either the e-mail or the message.  Pantoja Decl. ¶ 20.  The Government e-mailed Mr. Segal again on June 11, 2013.  Id.; E-mail from Pantoja to Segal (June 11, 2013, 13:32 EST) (annexed as Ex. 23 to Pantoja Decl.).  Mr. Segal replied by indicating that he had tried to contact Caussade, but she had not called him back.  E-mail from Segal to Pantoja (June 11, 2013, 16:33 EST) (annexed as Ex. 24 to Pantoja Decl.).  He suggested scheduling a deposition for the following week.  Id.  The Government proposed scheduling Caussade's deposition for June 18, 19, or 20, 2013, and noted that Caussade would have to seek an extension of the June 14 deadline.  Pantoja Decl. ¶ 20; E-mail from Pantoja to Segal (June 11, 2013, 16:57 EST) (annexed as Ex. 25 to Pantoja Decl.).  Caussade never requested an extension, and Mr. Segal never responded to the Government's follow-up e-mails dated June 11, 13, 18, and 20, 2013, all of which inquired about scheduling Caussade's deposition.  Pantoja Decl. ¶¶ 20–21.

By letter dated June 28, 2013, the Government sought leave to file a motion for sanctions

against Caussade.  See id. ¶ 22; Letter from Pantoja to Hon. Gabriel W. Gorenstein, dated June 28, 2013 (annexed as Ex. 29 to Pantoja Decl.) ("June 28 Letter"), at 2.  Specifically, the Government described Caussade's failure to complete her deposition prior to June 14, 2013, as required by the May 24 Order, and her failure to correct deficiencies in her interrogatory responses.  See June 28 Letter at 2.  In response, Mr. Segal conceded that the Government's statements were "correct as to plaintiff's non compliance."  Letter from Segal to Hon. Gorenstein, dated July 1, 2013 (annexed as Ex. 30 to Pantoja Decl.) ("July 1 Letter"), at 1.  The only explanation that he could offer was that "Ms. Caussade ha[d] been uncooperative with [him]."  Id.  Segal stated that he had sent her letters on May 24, June 24, and June 28, 2013 requesting that she sign the interrogatory responses, but she never returned the papers.  Id.  He had advised her "by letter and phone that her non cooperation [would] cause her case to be dismissed."  Id.  Noting that she did comply with the Government's request for a medical examination, Mr. Segal requested a 45-day extension of the discovery deadlines.  Id. at 1–2.

The Court denied plaintiff's request for an extension.  Order, filed July 8, 2013 (Docket # 11) ("July 8 Order").  The Court scheduled a conference on the matter for July 11, 2013; ordered plaintiff to appear at the conference; and warned that "[i]f she fail[ed] to appear, this case may be dismissed."  Id.  Mr. Segal was ordered to use all reasonable methods, including e-mail, telephone, and overnight mail, to apprise his client of her obligation to appear at the conference.  Id.  Mr. Segal and the Government attended the conference, but Caussade did not.  Pantoja Decl. ¶ 24.  At the conference, Mr. Segal indicated that he had attempted to inform Caussade about the conference numerous times through various means.  The Court granted the Government leave to file this motion.  Id.

On July 23, 2013, the Government filed the instant motion to dismiss for failure to

4

prosecute or in the alternative to dismiss as a sanction for plaintiff's failure to comply with Court orders and the Federal Rules.  <u>See</u> Gov't Mem.  In opposition, Mr. Segal did not contest the factual matters presented by the Government.  <u>See</u> Opp.  Rather, he noted that he had been unsuccessful in his attempts to contact Caussade via telephone, first-class and certified mail, and FedEx.  <u>Id.</u> at 1.  "The telephone number [he had] for plaintiff does not work and [his] written attempts at communication have been unsuccessful."  <u>Id.</u>  Since February 2013, Mr. Segal has had two successful communications with Caussade: once in May 2013, when he instructed her to undergo a medical examination, and once thereafter, when he spoke with her over the telephone about coming to his office to sign the responses to the interrogatories.  <u>Id.</u> at 1–2.  The opposition papers request that the motion be denied, or in the alternative, that the Court enter a conditional order which dismisses the case only if discovery is not completed within 45 days. Opp. at 2.  On September 19, 2013, and September 20, 2103, a clerk left messages for Mr. Segal to determine if he had had any contact with his client since his motion papers were filed.  Mr. Segal did not return either phone call.

II.    <u>DISCUSSION</u>

        Fed. R. Civ. P. 41(b) provides in relevant part that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Dismissal for lack of prosecution or for failure to comply with an order of the court is a matter committed to the discretion of the district court.  <u>See</u> <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633 (1962).  Although dismissal is a "harsh remedy that should be utilized only in extreme situations," <u>Lewis v. Rawson</u>, 564 F.3d 569, 576 (2d Cir. 2009) (quoting <u>Minnette v. Time Warner</u>, 997 F.2d 1023, 1027 (2d Cir. 1993)), "the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful

5

access for other prospective litigants to overcrowded courts," <u>Lyell Theatre Corp. v. Loews Corp.</u>, 682 F.2d 37, 42 (2d Cir. 1982).

The Second Circuit has articulated five factors that it uses to review whether a court has properly dismissed a case for failure to prosecute:

> [whether] (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

<u>Lewis</u>, 564 F.3d at 576 (quoting <u>U.S. ex rel. Drake v. Norden Sys., Inc.</u>, 375 F.3d 248, 254 (2d Cir. 2004)); <u>accord</u> <u>Mitchell v. Lyons Prof'l Servs., Inc.</u>, 708 F.3d 463, 467-8 (2d Cir. 2013) (citing <u>Lucas v. Miles</u>, 84 F.3d 532, 535 (2d Cir. 1996)).  "In analyzing the factors, the court reviews the record as a whole . . . ."  <u>Toliver v. Comm'r of N.Y.C. D.O.C.</u>, 2011 WL 5242643, at *3 (S.D.N.Y. Nov. 3, 2011).  In general, "[n]o one factor is dispositive" in determining whether dismissal is warranted.  <u>Lewis</u>, 564 F.3d at 576 (alteration in original) (citation and internal quotation marks omitted); <u>accord</u> <u>Lowery v. Petrusino</u>, 2009 WL 5125122, at *3 (S.D.N.Y. Dec. 29, 2009).  As described below, all the factors militate in favor of dismissal.

A.    <u>Delay of Significant Duration</u>

Caussade has neglected to prosecute this case since at least February 2013.  On February 12, 2013, the Government first noticed Caussade for a deposition scheduled for February 25, 2013.  Pantoja Decl. ¶ 12; Dep. Notice.  Despite the Government's diligent efforts to schedule her deposition since then, Caussade has never made herself available for a deposition.  <u>See</u> Pantoja Decl. ¶¶ 15–24.  Caussade also violated a court order by failing to complete her deposition prior to June 14, 2013.  <u>See</u> <u>id.</u> ¶ 22; May 24 Order.  She also never made initial

disclosures, Pantoja Decl. ¶ 5, and never corrected deficiencies in her responses to the Government's interrogatories, see id. ¶ 22.  Finally, she failed to appear at the July 11 conference in violation of the Court's order to do so.  See id. ¶ 24; July 8 Order.

When assessing the duration of the delay, courts consider "(1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." Norden Sys., Inc., 375 F.3d at 255 (citing Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001)).  The delays in this action are entirely attributable to plaintiff.  Caussade's failure to maintain contact with her counsel for months at a time has made prosecuting this case impossible.  In an attempt to correct her discovery lapses, Mr. Segal attempted to contact Caussade numerous times.  Opp. at 1.  But Caussade has not provided a working telephone number to Mr. Segal where she can be reached and has not otherwise responded to his inquires. Id.  Thus, the failure to prosecute this case rests on Caussade's shoulders.

There is no fixed period of time that must elapse before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal.  See Cain v. Simon & Schuster, 2013 WL 1608620, at *3 (S.D.N.Y. Apr. 15, 2013) (citation omitted); Antonio v. Beckford, 2006 WL 2819598, at *2 (S.D.N.Y. Sept. 29, 2006).  Delays of several months have been found to warrant dismissal.  See Cain, 2013 WL 1608620, at *3 (delays of "five to eight months are usually sufficient" to weigh in favor of dismissal) (citing Davis v. Rowe, 2011 WL 3159133, at *2 (N.D.N.Y. July 26, 2011)); see also Antonio, 2006 WL 2819598, at *2 (plaintiff's failure to comply with court deadline for more than four months favored dismissal); Lopez v. Catholic Charities of Archdiocese of N.Y., 2001 WL 50896, at *3-4 (S.D.N.Y. Jan. 22, 2001) (dismissing where plaintiff failed to advance claim for a period of three months, violated several court orders, failed to respond to motions, and failed to appear at scheduled conferences).  Courts have

7

found dismissal appropriate for even shorter delays when a party has become completely inaccessible, as inaccessibility "strongly suggests that [plaintiff] is not diligently pursuing [his] claim." Dong v. United States, 2004 WL 385117, at *3 (S.D.N.Y. Mar. 2, 2004) (citing Hibbert v. Appel, 2000 WL 977683, at *2 (S.D.N.Y. July 17, 2000)) (dismissing when plaintiff inaccessible for two months). Caussade has been inaccessible since May 2013 and has caused at least a seven-month delay in prosecuting this action. Accordingly, the duration of the delay weighs heavily in favor of dismissal.

      B.    Notice that Further Delays Would Result in Dismissal

Prior to dismissal, a court is generally expected to provide warnings that further delay or non-compliance could lead to dismissal, see Lucas, 84 F.3d at 535-36 (reversing where district court did not warn that dismissal could result from non-compliance), but this is not an absolute requirement, Link, 370 U.S. at 633 ("[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so . . . ."). Here, the Court ordered Caussade to attend a conference concerning her discovery lapses and warned that her failure to attend the conference could lead to dismissal. July 8 Order. Mr. Segal made substantial efforts to inform Caussade about her obligations, but to no avail. See July 1 Letter. Since the conference, Mr. Segal has been unable to contact Caussade. See Opp. at 1. Furthermore, Mr. Segal at one point communicated to his client that "her non cooperation will cause her case to be dismissed." July 1 Letter. Thus, Caussade has been warned that her continued failure to schedule a deposition and to correct her interrogatory responses could lead to dismissal.

In any event, given that the Court and counsel have no way to contact Caussade, any further attempt to warn her would be futile. See Blake v. Payane, 2011 WL 7163172, at *2 (S.D.N.Y. Mar. 11, 2011) (dismissing for failure to prosecute when court has "no means of

giving [plaintiff] notice"); Dong, 2004 WL 385117, at *3 (noting that warning ineffective where court has "no way to reach" plaintiff); Fitzgerald v. Anderson, 1994 WL 97144, at *2 (S.D.N.Y. Mar. 21, 1994) (same).  "The Court notes that any inability to receive actual notice of the proceedings was of plaintiff['s] own doing," as she has failed to remain accessible to her attorney and the Court.  Lukensow v. Harley Cars of N.Y., 124 F.R.D. 64, 66 (S.D.N.Y. 1989).

C.     Prejudice to Defendant Resulting from Further Delays

The third factor requires an assessment of whether the "defendant was likely to be prejudiced by further delay."  Lewis, 564 F.3d at 576 (citation and internal quotation marks omitted).  A rebuttable presumption that a defendant was prejudiced may arise where "the delay was lengthy and inexcusable."  Norden Sys., Inc., 375 F.3d at 256.  However, "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater."  Lyell Theatre Corp., 682 F.2d at 43 (citations omitted).

Where a plaintiff has become inaccessible for months at a time, courts presume prejudice.  See, e.g., Walters v. Valenti, 2010 WL 692961, at *3 (S.D.N.Y. Feb. 23, 2010) (presuming prejudice where court had no way to contact plaintiff for extended period of time); Dong, 2004 WL 385117, at *3 ("[Plaintiff's] totally unexplained disappearance is manifestly unreasonable, and therefore presumptively prejudices the [defendant].") (internal citations omitted); Hibbert, 2000 WL 977683, at *3 (prejudice presumed where plaintiff had been inaccessible for six months).  Because Caussade's inaccessibility has delayed this case for many months, prejudice is presumed.

D.     Balance Between Calendar Congestion and the Opportunity to be Heard

Under the fourth factor, a court considers "the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard."  Norden Sys., Inc., 375 F.3d at

9

257 (citation omitted).  The Second Circuit has cautioned that "'[a] court must not let its zeal for a tidy calendar overcome its duty to do justice.'"  Outley v. City of N.Y., 837 F.2d 587, 589 (2d Cir. 1988) (quoting Winston v. Prudential Lines, Inc., 415 F.2d 619, 621 (2d Cir. 1969), cert. denied, 397 U.S. 918 (1970)); see also Lucas, 84 F.3d at 535–36 ("There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court.").  Nonetheless, "fairness to other litigants, whether in the same case or merely in the same court as competitors for scarce judicial resources" may require a district court to dismiss a case pursuant to Rule 41(b).  Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 668 (2d Cir. 1980) (internal parentheses omitted); accord Yacub v. Coughlin, 105 F.R.D. 152, 153 (S.D.N.Y. 1985) ("The court cannot permit this litigant, or any litigant, to abuse its scarce resources while many others, desirous and deserving of relief, must patiently await their turn.").

Here, the balance tips decidedly in favor of the Court's need to reduce docket congestion — and against the plaintiff's right to be heard — as Caussade has shown little interest in prosecuting this case.  She has not been in contact with her counsel for about five months and has failed to respond to requests to schedule a deposition or to correct her interrogatory responses.  See Opp. at 1–2.  "It is not an efficient use of the Court's or defendant['s] resources to permit this case to languish on the docket in the hope that plaintiff will reappear in the future." Davison v. Grillo, 2006 WL 2228999, at *2 (E.D.N.Y. Aug. 3, 2006); accord Blake, 2011 WL 7163172, at *2.  Because Caussade has made no effort to prosecute this action, it would be unfair to the numerous other litigants who await the attention of this Court to permit her suit to remain on the docket.

E.      Consideration of Lesser Sanctions

The final factor pertains to "whether lesser sanctions would have been sufficient to remedy any prejudice resulting from plaintiff's delay." Norden Sys., Inc., 375 F.3d at 257 (citation omitted).  However, "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 148 (2d Cir. 2010) (citation omitted). Here, it would not even be possible to impose lesser sanctions in a manner that Caussade would be aware of them inasmuch as she has been inaccessible for the past several months.  Courts consistently find that dismissal is the only adequate remedy for failure to prosecute where a plaintiff cannot be contacted because the plaintiff would be unaware of any lesser sanction that could be imposed.  See, e.g., Blake, 2011 WL 7163172, at *2 ("'[N]o lesser sanction would be effective, since [plaintiff] would be unaware that any sanction had been imposed.'") (quoting Lewis v. Power, 2007 WL 160759, at *2 (W.D.N.Y. Jan. 17, 2007)); Dong, 2004 WL 385117, at *3 ("[N]o remedy other than dismissal makes sense.  Ordinarily, I might send [plaintiff] a warning or order him to appear for a hearing, but I have no way to reach him."); Camara, 2001 WL 263006, at *4 ("[A] lesser sanction would be ineffective and unenforceable because plaintiff's whereabouts are unknown.").  Because Caussade has effectively disappeared, she cannot be given notice of any sanction less than dismissal.

III.    CONCLUSION

For the foregoing reasons, the Government's motion to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b) (Docket # 12) is granted.  The complaint is dismissed.  The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

11

Dated: September 26, 2013
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge